IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| GLADYS GUZMAN, | : | |
| Plaintiff, | : | |
| v. | : | Civil Action No. 15-841-RGA |
| CAROLYN W. COLVIN, Acting Commissioner Of Social Security, | : | |
| Defendant. | : | |

**MEMORANDUM ORDER**

Plaintiff and Defendant filed cross-motions for summary judgment. (D.I. 11, 13). The Magistrate Judge has issued a Report and Recommendation. (D.I. 16). Plaintiff has filed objections (D.I. 17), to which Defendant has responded. (D.I. 18). Defendant filed no objections. The matter is now before this Court.

The Magistrate Judge had authority to make the decision pursuant to 28 U.S.C. § 636(b)(1)(B), which provides that "a [district] judge may . . . designate a magistrate judge to conduct hearings, including evidentiary hearings, and to submit . . . proposed findings of fact and recommendations for the disposition . . . of any motion [including a motion for summary judgment or to dismiss for failure to state a claim upon which relief can be granted]." Such a designation was made. (D.I. 15). The objected-to portions of the Magistrate Judge's Report and Recommendation are subject to *de novo* review pursuant to 28 U.S.C. § 636(b)(1).

The Magistrate Judge recommended granting summary judgment to Defendant and

1

against Plaintiff. The briefing before the Magistrate Judge raised five issues. Plaintiff's objections to this Court argue that the Magistrate Judge got each of the five issues wrong. I will address them one by one.

Plaintiff has three treating physicians whose evidence the ALJ discounted. The three doctors were Drs. Cemerlic, Walsh, and Sacre. Plaintiff argues that there was error in the discounting of their opinions.

First, Dr. Cemerlic. Dr. Cemerlic was Plaintiff's pain management provider. Dr. Cemerlic stated that Plaintiff had "extremely limited sedentary residual functional capacity, with only sitting and standing/walking for zero to one hour in each eight-hour workday, as well as frequent unscheduled breaks and absences." (D.I. 7-2 at 44). The opinion was given "little weight" because it was "generally not consistent with the mixed and sometimes benign, objective evidence discussed above [and] inconsistent with the claimant's activities of daily living and her largely conservative treatment history." (*Id.*). The ALJ could give a treating physician's opinion less than controlling weight if it was not "well supported by medically acceptable clinical and laboratory diagnostic techniques, and [was] inconsistent with the other substantial evidence on record." (D.I. 16 at 22). In this case, as is evidenced by the parties' submissions (D.I. 17, p.2; D.I. 18, p.3), there was conflicting medical evidence in the record. The ALJ noted the "mixed" nature of the objective findings in the record. Thus, the ALJ could conclude the "medically acceptable clinical and laboratory diagnostic techniques" did not "well support" Dr. Cemerlic's opinions. Further, the ALJ could (and did) consider "other substantial evidence," such as Plaintiff's activities of daily living. The extent of the activities of daily living ("change bedding, put clothes into the laundry, wash dishes, drive, and grocery shop") does not show that she could

2

work, but that is not the point. The point is that Dr. Cemerlic's questionnaire answers show someone who ought not be able to do the activities of daily living that Plaintiff did. Thus, his opinions were inconsistent with "other substantial evidence." The ALJ had a basis for discounting Dr. Cemerlic's opinion.

Second, Dr. Walsh. Dr. Walsh was Plaintiff's pulmonologist. (D.I. 7-2 at 44). The ALJ gave his "opinion . . . little weight, as his characterization of the severity of the claimant's asthma is not consistent with the medical record." (*Id.*) The ALJ cited the lack of inpatient hospitalizations and a recent pulmonary function test as support for his conclusion. Dr. Walsh stated Plaintiff would have asthma attacks once or twice per month, which would incapacitate her for three-to five days each. (D.I. 7-13 at 891). Dr. Walsh started treating Plaintiff in April 2012. (D.I. 16 at 6). She clearly showed improvement after he started treating her asthma. The pulmonary function test on April 25, 2012, showed "significant improvement indicating that [Plaintiff] would most likely benefit from ongoing bronchodilator therapy." (D.I. 7-11 at 725). Dr. Walsh's subsequent letter on July 11, 2012, reflected that Plaintiff "feels considerably better. She feels that [medicines] made a big improvement in her symptoms. She rarely wheezes and her nose is now open most of the time. [Various measures] were low pre-bronchodilator but normalized post-bronchodilator." (D.I. 7-11 at 721). "I now suspect, that she may be too mild a case to warrant Xolair injections, especially since the medication seems to have worked." (*Id.*). Dr. Walsh's assessment, dated January 22, 2013 (D.I. 7-13 at 889-95), is inconsistent with the record, including his own records. The ALJ had a basis for discounting Dr. Walsh's opinion.

Third, Dr. Sacre. Dr. Sacre was Plaintiff's psychiatrist. (D.I. 7-13 at 907). The ALJ gave his opinions "little weight." Dr. Sacre treated Plaintiff monthly from September 2012 to at least

3

February 2013, when he submitted an assessment. Among other things, Dr. Sacre stated her then-current GAF was 35. (*Id.* at 900). There are numerous other GAFs in the record at other times, all of which were significantly higher than 35.[1] As noted by the Magistrate Judge, Dr. Sacre's "wildly differe[nt]" GAF score provided a basis to accord his opinions less weight. Plaintiff relies heavily on "the positive clinical findings" that Dr. Sacre said existed. (D.I. 7-13 at 901, cited at D.I. 17, p.7). The submitted medical records are inconsistent with the many positive findings Dr. Sacre identified. For example, he says affect is "flat," yet the mental status exams of January 12, 2012, November 12, 2013, and December 10, 2013, all report affect as "appropriate." (D.I. 7-11 at 701; D.I. 7-14 at 934 & 937). Dr. Sacre describes her as having "difficulty thinking or concentrating," but the exams report "well organized" information and thought content, "Thought processes are logical," "judgment is good [or fair]," and "Reasoning is good." In some regards the mental status exams are consistent with Dr. Sacre's "positive clinical findings," but overall the mental status exams paint a significantly healthier picture of Plaintiff than does Dr. Sacre.[2] There is a basis in the record to support the ALJ's decision to give Dr. Sacre's opinion "little weight."

Fourth, Plaintiff's credibility. The Magistrate Judge recommended holding that there was substantial evidence to support the ALJ's determination that Plaintiff's testimony was only "partially credible" when describing her symptoms and limitations. (D.I. 7-2 at 44). Credibility

---

[1] September 2011, 58; October 2011, 60-65; January 2012, 55; April 2013, 58; December 2013, 60. (D.I. 16 at 7-9).

[2] Although not objected to by Plaintiff, the Report and Recommendation characterized these mental status exams as having been done by Dr. Cleary. (D.I. 16 at 25). Nancy Ann Cleary conducted some of the exams, but she is an "APN" rather than a doctor. (D.I. 7-11 at 696).

4

determinations are the province of the ALJ. The ALJ gave specific reasons for his credibility determination. The ALJ summarized them as "objective medical evidence and her treatment history." Plaintiff objects to each of these.[3] It is certainly possible to interpret the facts differently than the ALJ did, but that does not mean that there was not a substantial basis for the ALJ's conclusion. I agree with the Magistrate Judge's analysis of this issue. (*See* D.I. 16 at 25-28). Plaintiff's objection to the ALJ's credibility determination is overruled.

Fifth, the hypothetical question to the ALJ. As pointed out by the Commissioner in her response to Plaintiff's objections, I previously ruled on the legal issue raised by Plaintiff. For the reasons stated in *Drevas v. Colvin*, 2015 WL 7575494, *11 (D.Del. Nov. 25, 2015), I would reach the same conclusion in this case.

Thus, this ___ day of July 2016, IT IS HEREBY ORDERED:

1. The Report and Recommendation (D.I. 16) is **ADOPTED**;

2. Plaintiff's Motion for Summary Judgment (D.I. 11) is **DENIED**;

3. Defendant's Cross-Motion for Summary Judgment (D.I. 13) is **GRANTED**; and

4. The case is **CLOSED.**

A separate judgment shall issue.

United States District Judge

---

[3] Plaintiff particularly objects (D.I. 17, p.11) to the ALJ's reference to her past felony conviction. She was incarcerated from 1998 to 2004 for a drug offense. (D.I. 7-2 at 62). Thus, her claim of disability arose seven years from her release from prison, and the hearing in this case occurred in 2014, ten years from her release from prison. If this were a civil case in district court, there would be a reasonable chance that a judge would admit the conviction for credibility. *See* Fed. R. Evid. 609(a) & (b). In any event, it does not seem to me to be error for the ALJ to have said the conviction "somewhat undermine[s]" Plaintiff's credibility. It is clear to me that was not the main reason for the ALJ's conclusion of diminished credibility.